

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-21-00381-CV

**IN THE INTEREST OF P.J.C.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA02145
Honorable Charles E. Montemayor, Judge Presiding[1]

Opinion by:      Beth Watkins, Justice

Sitting:          Patricia O. Alvarez, Justice
                 Beth Watkins, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: February 16, 2022

AFFIRMED

M.L.C. a/k/a M.L.S. (Mother) appeals the trial court's order terminating her parental rights

to her child P.J.C. (born 2017).[2] Mother argues the evidence is legally and factually insufficient to

support the trial court's finding that termination is in P.J.C.'s best interest. We affirm the trial

court's order.

### BACKGROUND

In April of 2020, the Texas Department of Family and Protective Services received a report

that P.J.C. was wandering alone in the street. The Department created a family-based safety plan,

---

[1] The order on appeal was signed by the Honorable Charles E. Montemayor. The Honorable Martha B. Tanner presided over the trial and orally rendered the judgment of termination.
[2] To protect the privacy of the minor child, we use initials or pseudonyms to refer to the child and his mother. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

and Mother "agreed to let [P.J.C.] leave the home and go with his paternal grandparents." In October of 2020, the Department removed P.J.C. from Mother's care due to concerns about Mother's drug use, obtained temporary managing conservatorship over P.J.C., and placed him in foster care. The Department filed a petition to terminate Mother's parental rights and created a family service plan requiring Mother to, inter alia, complete a drug assessment and any drug treatment recommended by the assessment, complete a psychological evaluation, and attend counseling as a condition of reunification. The Department ultimately pursued termination of Mother's parental rights.

Ten months after removal, the trial court held a one-day bench trial at which Mother appeared through counsel. The trial court heard testimony from two witnesses: (1) the Department's investigator; and (2) the Department's legal caseworker. At the conclusion of trial, the court orally rendered judgment terminating Mother's parental rights pursuant to section 161.001(b)(1)(N), (O), and (P) and its finding that termination of Mother's parental rights was in P.J.C.'s best interest. The trial court later signed a written order consistent with its oral rendition of termination. Mother appealed.

**ANALYSIS**

***Applicable Law and Standard of Review***

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother's parental rights and

that termination was in the child's best interest. TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). In reviewing the legal sufficiency of the evidence to support the trial court's findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (internal quotation marks omitted). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (internal quotation marks omitted). The factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

### *Best Interest*

#### *Applicable Law*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d 92, 97 (Tex. App.—San Antonio 2017, no pet.). To determine whether the Department satisfied this

burden, the Texas Legislature has provided several factors[3] for courts to consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has used a similar list of factors[4] to determine a child's best interest. TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest[.]" *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in a child's best interest, a factfinder may judge a parent's future

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

*Application*

Drug use can destabilize the home and expose children to physical and emotional harm if not resolved. *See, e.g., In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *8 (Tex. App.—San Antonio Aug. 21, 2019, pet denied) (mem. op.). Here, the Department presented evidence that Mother underwent two drug assessments: the first during the pre-removal investigation, and the second after P.J.C.'s removal, when Mother admitted to the legal caseworker "that she did struggle with using" methamphetamines. *See id.*; *see also* TEX. FAM. CODE § 263.307(b)(8). The second drug assessment recommended that Mother complete an inpatient program. Mother completed the intake process for an impatient program in San Antonio, but she did not complete the program and was unsuccessfully discharged in January of 2021. The Department's caseworker testified that Mother "went in for about a week or so" and that a typical inpatient program is ninety days. *See In re N.N.R.*, No. 04-20-00410-CV, 2021 WL 260240, at *4 (Tex. App.—San Antonio Jan. 27, 2021, pet. denied) (mem. op.) (considering parent's failure to complete drug treatment).

In June of 2021, Mother went to a second inpatient program, this time in Waco. On July 6, 2021, Mother sent the Department's legal caseworker pictures of a certificate from the Waco program. The caseworker agreed the certificates showed Mother "might have completed" the Waco program, but she testified that the Department does not accept a certificate from an inpatient program "on its face." Instead, the Department contacts the facility to obtain confirmation that the parent has completed the program. The caseworker testified she was not able to obtain confirmation from the Waco facility that Mother had completed the program. *See In re M.A.N.Z.*, No. 04-17-00381-CV, 2017 WL 6032539, at *6 (Tex. App.—San Antonio Dec. 6, 2017, pet. denied) (mem. op.). However, the caseworker also attempted to arrange an appointment with

Mother to "sit down and review any of her discharge paperwork" from the Waco program. She stated this review was intended "[t]o follow up, as far as any additional requirements that they normally get" such as "relapse prevention programs, or referrals for sober living, or additional sponsors, and things likes [*sic*] that, so that they can maintain their sobriety." The caseworker testified Mother never made an appointment to review that information with her.

Between her July 2021 exit from the Waco program and an August 2021 permanency review hearing held approximately two weeks before trial, Mother "was not compliant" with requirements that she submit to drug testing. The trial court could have reasonably inferred that Mother did not submit to drug tests during this time because she was using drugs. *See In re T.N.J.J.*, No. 04-19-00228-CV, 2019 WL 6333470, at *5 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (mem. op.). Following the August 2021 permanency review hearing, Mother "did submit to a hair follicle test," but she refused a urine analysis. The caseworker testified that she reviewed the results of Mother's hair follicle test, and based on that review, "[t]he Department has concern that mom is not staying sober." *See* TEX. FAM. CODE § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. The caseworker also testified that the Department was concerned about "Mom's lack of ability to provide us with a relapse prevention program, or to discuss, you know, kind of what her steps are going forward to remain sober[.]" The caseworker stated that when she asks Mother questions "related to her substance abuse," Mother "avoids the question." *See* TEX. FAM. CODE § 263.307(b)(8); *In re K.J.G.*, 2019 WL 3937278, at *8 (considering caseworker's "concern that illegal drug use could be a continuing problem").

Additionally, the Department presented evidence that it had reviewed the court-ordered service plan with Mother and Mother understood the plan, but she did not complete it. *See In re R.R.C.*, No. 04-17-00306-CV, 2017 WL 4413205, at *3 (Tex. App.—San Antonio Oct. 4, 2017, pet. denied) (mem. op.). While Mother underwent the psychological evaluation required by her

service plan, she did not comply with the requirement to attend therapy. *See* TEX. FAM. CODE § 263.307(b)(10), (11); *In re G.S.M.*, No. 04-17-00539-CV, 2017 WL 6597826, at *4 (Tex. App.— San Antonio Dec. 27, 2017, pet. denied) (mem. op.) (considering parent's "failure to complete her court-ordered counseling sessions"). The Department also presented evidence that Mother provided the address of "a family-owned home" in Marble Falls where she was living at the time of trial, but did not provide proof of employment or income. *See In re T.A.G.*, No. 04-20-00565-CV, 2021 WL 1988249, at *5 (Tex. App.—San Antonio May 19, 2021, no pet.) (mem. op.).

Finally, the Department presented evidence that Mother spent most of the time this case was pending living with her own mother in the home from which P.J.C. had been removed and that she was still "sometimes" staying there at the time of trial. The caseworker testified this living situation concerned her because when P.J.C. was removed from that home, he had "not necessarily lice, but bugs" and was underweight and malnourished. When the caseworker asked Mother about P.J.C.'s condition when he was removed, Mother did not "understand why we would say those kind of things about him. She said he's always been small." *See In re E.D.*, 419 S.W.3d at 620 (factfinder may judge parent's future conduct by her past conduct). The caseworker did not consider this an adequate response to the Department's concerns. *See* TEX. FAM. CODE § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. The Department also presented evidence that, in contrast to P.J.C.'s condition at the time of removal, in his current placement he had gained weight, was "considered in his percentile for a[n] average four-year-old," and was "doing very well." *See In re L.M.T.*, No. 04-17-00769-CV, 2018 WL 2121358, at *5 (Tex. App.—San Antonio May 9, 2018, pet. denied) (mem. op.). The caseworker testified that she believed P.J.C.'s current placement would lead to long-term permanency for him. *See id.* at *2; *see also* TEX. FAM. CODE ANN. § 263.307(a).

Mother argues the evidence shows she was cooperative with the Department, participated in drug treatment, and completed the Waco inpatient program. She contends that she "provide[d] an address for her residence" but "the worker failed to inspect the housing in order to sufficiently testify as to the appropriateness of the residence." While she concedes that she missed some visits with P.J.C., she notes that there is no evidence that any of her visits were inappropriate or indicated "a lack of a bond between" Mother and P.J.C. Mother argues that she "substantially complied with her plan of service and deserves an opportunity to prove her devotion to a better life" for herself and P.J.C.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of P.J.C. *In re J.F.C.*, 96 S.W.3d at 266. We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Mother's arguments to the contrary.

## CONCLUSION

We affirm the trial court's order of termination.

Beth Watkins, Justice